No. 22215.

Phillip Demesio Gonzales *v.* The People of the State of Colorado.
(438 P.2d 686)

Decided March 25, 1968.

Irving P. Andrews, Donald N. Pacheco, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, George E. DeRoos, Assistant, for defendant in error.

*En Banc.*

Mr. Chief Justice Moore delivered the opinion of the Court.

Plaintiff in error, hereinafter referred to as the defendant, was convicted of the crime of first degree murder and the judgment of the trial court imposed a sentence of imprisonment for life in the state penitentiary.

Reversal of the judgment is sought on several grounds which we summarize as follows:

1. Television cameras were permitted in the courtroom.

2. The court erroneously permitted the district attorney to examine a witness although the prosecutor knew that the witness intended to claim immunity from giving testimony on the ground of self-incrimination.

3. An instruction on "flight" should not have been given.

4. Evidence relating to "other offenses" was improperly admitted.

5. Defendant's motion to suppress evidence should have been granted.

6. The court erred in refusing to give instructions on the crime of manslaughter.

The facts, which are undisputed, disclosed that on the evening of January 20, 1965, police officers Peterson and Major were riding in a police car on routine patrol and they observed that a light colored Ford car travelling at a high rate of speed eastward across Broadway on Ellsworth avenue ran a red light. The officers pursued the speeding car which turned south on Lincoln street to east Bayaud where it abruptly stopped. Two men jumped out of the car and ran toward an alley. The officers pursued them into the alley on foot. The suspects separated and Officer Peterson chased and apprehended one John Robert Lucero. Officer Major pursued the other man in a northerly direction down the alley. Peterson heard two shots fired. He called to Officer Major but received no answer to his call. Peterson proceeded to take Lucero back to the police car when he observed two persons running between two buildings in an easterly direction toward Lincoln street. It developed that one of these men, Mr. Herrera, was pursuing the suspect as hereinafter mentioned. Peterson then saw Officer Major lying in the alley mortally wounded. He immediately broadcast a description of the suspect as a bare-headed Spanish-American dressed in a black raincoat. He also called for medical assistance

for Officer Major who was taken to the hospital where he was pronounced dead upon arrival. His death was caused by two gunshot wounds, one in the chest and one in the head, the latter fired at close range. It was further shown that a bare-headed Spanish-American wearing a black raincoat was pursued by one Euginio Herrera in an easterly direction toward Sherman street and that the man being pursued turned and fired shots at Herrera who then stopped his pursuit of the suspect. Strong circumstantial evidence implicates the defendant as being the man who shot Major and fired at Herrera.

Officers Johnson and Lohr, answering the call of Peterson, were informed that two Spanish-Americans had run into an apartment at No. 1 Sherman street. They consulted the manager of the apartment house and were directed to an apartment on the third floor occupied by Gonzales. A third policeman had joined the other officers and they knocked on the door several times before the defendant opened it. He was told that a police officer had been killed a short distance away and that one of two suspects had come into that apartment house. An officer asked, "May we come in?" and the defendant answered "Yeah" or "Yeah, man." Officer Lohr noticed a black coat as he stepped inside the door. The defendant said that the coat was his and that he had been wearing it that evening. Three buttons were missing from it and three matching buttons were found at the scene of the killing. Blood was found on the coat. One of the officers saw a small paper bag which he picked up from a waste basket. It contained three expended shell casings. The defendant was asked where the gun was and he said, "I don't have a gun." He explained, with reference to the three spent shells, "Maybe some of my friends which were there with me dropped them in there." A revolver was found on the ground outside the apartment house at a point where it could obviously have been thrown from the window of defendant's apartment. There was expert testimony

that the bullets which killed Officer Major and the shell casings above mentioned were fired from this revolver. The defendant did not testify. His counsel called two witnesses whose testimony was to the effect that they saw other Spanish-Americans in the vicinity where the crime was committed.

■■ With reference to the presence of a single, concealed television camera in the courtroom, it is sufficient to say that its possible use was strictly regulated pursuant to the rule of this court then in effect. See *Re Canon of Judicial Ethics*, 132 Colo. 591, 296 P.2d 465. Defendant relies on *Estes v. Texas*, 381 U.S. 532, 85 S. Ct. 1628, 14 L. Ed. 2d 543, decided subsequent to the trial of defendant. The facts in *Estes* are not in the least comparable to those in the case at bar. There is nothing in the record of any unusual publicity connected with this case at any time, and nothing whatever in the record to indicate that any part of the courtroom proceedings was ever transmitted to any viewer by television or radio. Whether or not a film was made of any part of the trial, or whether any use whatever was made of any such film, is a matter on which the record is silent. It certainly is not shown that the presence of a camera in the courtroom in the least prevented a fair trial.

■ One Lee Vigil was called as a witness for the People. He advised the court that he was going to claim the right to refuse to testify on the ground of self-incrimination. Outside the presence of the jury the court held a hearing. An attorney was appointed to represent and advise him. The district attorney made known to the court that Vigil had signed a written statement indicating that he had knowledge of facts which could not in any manner implicate him in any crime, but which would be pertinent to the issues in the case on trial. The court ruled that the district attorney could ask questions and objections would be ruled on as each question was propounded, all pursuant to the direction of this court in *O'Chiato v. People*. 73 Colo. 192, 214 P. 404.

In the instant case Vigil was not an accomplice or a co-defendant. No bad faith on the part of the district attorney is shown and the trial court ruled properly. The point is unworthy of further comment.

The argument that the court erred in giving an instruction on "flight" has no merit, and deserves no comment.

Evidence of "other offenses" to which the defendant objected consisted of pictures of the stolen Ford automobile in which Lucero and his companion were speeding when Major and Peterson took up the chase, and a picture of Lucero, who was not present at the trial. There was no error in the admission of these exhibits.

The motion to suppress evidence was directed to the defendant's coat, the three spent shells, and the gun. These exhibits were properly admitted in evidence. The officers had probable cause to arrest the defendant, and the exhibits were not the product of an unreasonable search and seizure. *Gonzales v. People,* 156 Colo. 252, 398 P.2d 236; *Alire v. People,* 157 Colo. 103, 402 P.2d 610.

There was an abundance of evidence pointing inescapably to the guilt of the defendant. He had a fair trial.

The judgment is affirmed.

Mr. Justice McWilliams not participating.