366 So.2d 64 (1978)
Noel CHANDLER and Robert Granger, Appellants,
v.
The STATE of Florida, Appellee.
No. 77-2624.
District Court of Appeal of Florida, Third District.
December 19, 1978.
Rehearing Denied January 17, 1979.
*66 Hirschhorn & Freeman and Joel Hirschhorn, Miami, for appellants.
Robert L. Shevin, Atty. Gen., and William M. Grodnick, Asst. Atty. Gen., for appellee.
Steel, Hector & Davis and Talbot D'Alemberte and Donald M. Middlebrooks, Miami, for Post-Newsweek Stations of Florida, Inc. as amicus curiae.
Before HAVERFIELD, C.J., and PEARSON and KEHOE, JJ.
PER CURIAM.
Appellants Noel Chandler and Robert Granger were the defendants to a four count information[1] growing out of the burglary of Picciolo's Restaurant, Miami Beach, Florida, on May 23, 1977. At the time of the filing of the information on July 1, 1977, the two defendants were police officers with the City of Miami Beach Police Department.
During the trial, the defendants filed various motions and challenges to Florida's Experimental Canon 3 A(7). Pursuant to this canon, cameras were permitted to televise portions of the defendants' trial. The challenges were overruled and requests to exclude live television coverage were denied. In addition, the defendants' request to sequester the jury was also denied.
The trial in this case began on December 5, 1977. During the trial, evidence was presented to the effect that a few days prior to the burglary in question, defendant Chandler was one of several Miami Beach police officers who investigated another burglary at Picciolo's Restaurant.
On Sunday, May 22, 1977, Picciolo's Restaurant closed at 12:30 a.m., early on the morning of May 23, 1977. Upon reopening the restaurant at 8:00 a.m. on the morning of May 23rd, one of the cooks noticed that the floor safe, which had contained the previous day's receipts, had been "drilled" and was empty. Also, a door leading outside was open.
During the trial, defense counsel sought a Writ of Body Attachment against Don Froschneider, who had been subpoenaed as a defense witness and whose testimony was said to be essential, inasmuch as he had brought a condensed cassette tape to the Miami Beach Police Department. This tape had been made by John Sion. The court stated that the condensed tape was not material except insofar as it might shed some light on when the original tape was made. Defense counsel argued that this was the reason, in fact, that he was seeking Froschneider's testimony. Defendants here argue that this fact is especially important in light of their affirmative defense of alibi for the night in question.
The recording originally made by John Sion has an extremely interesting origin. During May, 1977, Sion, who lived with his mother in an apartment near Picciolo's Restaurant, was awakened one morning (on an undetermined date) at 2:50 a.m., at which time he switched on his ham radio receiver and began reading a book. Upon hearing a conversation over the radio about "registers," he thought that the conversation might concern a robbery and, therefore, he began taping the conversation. Sion was unable to give the exact date of the making of the tape, although he testified that he had discussed the matter with Froschneider on May 26, 1977.[2] During their first conversation about the tape recording, Sion gave Froschneider the frequency numbers *67 on which the conversation had been overheard and Froschneider wrote the numbers on a piece of paper. Froschneider contacted Sion about hearing the tape and Sion played the tape for him, but Froschneider had trouble understanding it.[3] Therefore, Sion made a condensed version of the original tape, omitting the numerous pauses.
Miami Beach Police Office Charles Hayes testified that he had observed defendant Granger at about 3:00 a.m. on the morning of May 23, 1977, driving a marked Miami Beach Police vehicle. He testified that he observed Granger, who was in uniform, four or five times that morning within a two block radius of Picciolo's Restaurant. During the direct examination of Hayes, the jury was excused for the purpose of inquiring into the admissibility into evidence of Sion's original tape. The tape was played in its entirety. Hayes stated that he had previously heard the condensed version of the tape. Defense counsel objected to the admission of the original tape, arguing that there was no evidence linking it to the allegations contained in the information and that no testimony existed that the tape was made on May 23, 1977. The objection was overruled by the court and the tape was admitted into evidence. Upon the jury's return to the courtroom, the original tape was again played in its entirety for the jury. Hayes identified the voices on the tape as those of the two defendants. The tape contained numerous statements purporting to link the defendants to the burglary. On cross-examination, Hayes admitted remembering something about a complaint once made by Chandler and an Officer Wilson against him (Hayes) to the police supervisor. Upon objection by the prosecutor, the court limited any further inquiry into Chandler's complaint against Hayes.
On June 17, 1977, state attorney office investigator William Riley secured the original tape from Sion. Both Sion and Riley initialed the tape and dated it. On July 12, 1977, Riley obtained the inner-mechanisms of several locks from Picciolo's Restaurant, including the lock from the door which had been discovered open. The locks were submitted to the Public Safety Department Crime Lab for analysis and it was determined that there were scratches in the lock that had come from the exterior side of the opened door and which were relatively fresh. A locksmith, Earl Hall, concluded that as the marks had been made on the pins of the lock, the lock had been "picked."
Police testimony revealed that Granger and Chandler did not work the shift from 11:00 p.m. on May 22, 1977, to 9:00 a.m. the following morning. Further testimony revealed that in May and June of 1977, because of the large number of police vehicles owned by the Department, some of the unused vehicles were kept on the street behind the station.
The chief maintenance engineer at LaGorce Country Club testified that in January of 1977, defendant Chandler had approached him with regard to radio equipment and that Chandler had shown him two walkie-talkies on June 3, 1977.
Upon the prosecution's resting its case, defense counsel moved for a judgment of acquittal on the basis of insufficient evidence and the lack of a prima facie case. Defense counsel further argued that the case of the prosecution consisted solely of inferences piled upon inferences. The court denied the motion and the defense proceeded with its testimony and evidence.
Donald Froschneider testified about his conversation with Sion concerning the tape recording and, although not recalling the exact date of the conversation, placed it at about Memorial Day (May 29) of 1977. He testified that he had listened to the condensed version of the tape at a subsequent time and that Sion had written down the *68 frequency numbers on a piece of paper. He stated that he had brought the numbers to Lieutenant Webb of the Miami Beach Police Department, as well as the condensed version of the tape. Lieutenant Webb testified that he received the tape from Froschneider at the end of May, 1977, and that he immediately turned over the tape to Sergeant Morgan. Sergeant Morgan testified to receiving the tape from Lieutenant Webb on June 3, 1977, and that a piece of paper with numbers accompanied the tape, but he could not explain what happened to the piece of paper.
Sergeant Monteagudo of the Miami Beach Police Department testified that he received the condensed tape from Morgan on June 7, 1977, that he initialed it, which was standard police procedure, that he wrote the words "B and E, Granger and Chandler" on the tape but that later he obliterated the writing and subsequently turned the tape over to Martin Dardis of the state attorney's office.
Defendants moved that the condensed tape be admitted into evidence but the prosecutor's objection to that motion was sustained, and the defendants, therefore, renewed the motion, which was denied, at the conclusion of all the testimony.
Defendants sought to call Miami Beach Police Officer Robert Wilson, but the prosecution objected to any testimony by Wilson concerning a complaint by Wilson and Chandler against Hayes. Defendants submitted that the testimony involved two issues: (1) Hayes's bias and prejudice and (2) the impeachment of Hayes's prior statements in court. The court ruled that the testimony was inadmissible as it was independent evidence of bias and prejudice.
Defense counsel then proffered that Warren Holmes would testify that he was told by Sion that the original tape recording was made during the Memorial Day weekend. This testimony was excluded by the court over the defendants' objection.
Sion's mother, Helen Sion, testified that she had been present at the time that the recording was made and that this took place at the end of May, 1977, subsequent to an eye operation she had undergone. Records of the date of her operation were placed into evidence.
The wives of both defendants testified that they were with their respective husbands during the entire period of the evening of May 22nd to the morning of May 23, 1977, and that neither defendant left home after retiring to bed between 11 o'clock and midnight on the 22nd.
At the conclusion of all the testimony, the defense renewed its motion for judgment of acquittal, which was denied, and the case was submitted to the jury. During consideration, the jury requested (through a written note) that the condensed tape be sent into the jury room. The court denied this request because the condensed version of the tape had not been introduced into evidence. The defense had previously attempted to introduce, out of the presence of the jury, the testimony of an expert witness who would describe orally and corroborate by photographs the purposeful effort to obliterate certain writings on the face of the condensed tape. However, this evidence was excluded as not being relevant or material to the issues.
The jury returned a verdict of guilty against both defendants and the court entered judgments thereon. Defense counsel then requested a presentence investigation, but inasmuch as Count I was a misdemeanor, no presentence investigation would be allowed on that count. Defense counsel argued that sentencing on the misdemeanor should be deferred pending completion of the presentence investigation and that if the court sentenced the defendants on the misdemeanor alone, then the court would be required to deny bail pursuant to Fla.R. Crim.P. 3.691(a). The court agreed with defense counsel's interpretation of this rule. Defense counsel then inquired whether the court would consider bail pending appeal if the defendants waived a pre-sentence investigation. The court agreed, and the defendants waived their right to a presentence investigation. Thereupon, the court sentenced *69 the defendants on all charges[4] and ordered that they be taken into custody on the ground that no notice of appeal had been filed and they were, therefore, not entitled to bail pending appeal. The following day, notice of appeal having been filed, the court set appeal bonds on both defendants. Post-trial motions were denied on the grounds that the court lacked jurisdiction. Subsequently, on December 29, 1977, this court temporarily relinquished jurisdiction to afford the trial court an opportunity to rule on the defendants' post-trial motions. Pursuant to this court's order, on January 4, 1978, the trial court conducted a hearing on, and denied, the motions.
The first point of the defendants urges error upon the trial court's refusal to preclude television cameras from their trial.[5] Experimental Canon 3 A(7), Code of Judicial Conduct of the State of Florida, was promulgated by the Florida Supreme Court pursuant to its inherent and constitutional power under Article V of the Florida Constitution. The canon establishes standards and criteria for the use of cameras and electronic recording devices in all of Florida's courtrooms. The court, therefore, must be presumed to have considered that the adoption of the canon preserves the rights of the parties.
In determining that a one year trial program should be instituted, the Florida Supreme Court has determined that camera coverage of a trial does not, in and of itself, violate the federal and state constitutions. Petition of Post-Newsweek Stations, Florida, Inc., 327 So.2d 1 (Fla. 1976), 337 So.2d 804 (Fla. 1976), 347 So.2d 402 (Fla. 1977), 347 So.2d 404 (Fla. 1977). We, therefore, decline to discuss further the constitutionality per se of the canon, although we will, in view of the importance of the question involved, certify the decision to the Supreme Court of Florida as a question of great public interest.
We pass on to that portion of the defendants' point which urges that matters occurring in their trial pursuant to the experimental canon deprived them of their right to a fair trial and was violative of due process of law. The defendants urge error with regard to two rulings allowing television cameras in the courtroom during their trial; error is urged (1) in declining to preclude television cameras from their trial and (2) in declining to sequester the jury. However, the defendants have not met their burden of showing from this record that either of these circumstances operated to deprive them of a fair trial.
We have examined the record in the light of the defendants' contentions under this point and find no reason on this record to hold that the admission of television cameras into this particular trial caused the defendants any difficulty in the preparation or presentation of their case or deprived them of a impartial jury. Accordingly, we hold that no error is shown by the defendants' first point.
The defendants' second point urges that the trial court erred in denying their motion to suppress the tape recorded conversation.[6]
*70 Section 934.02(1), Florida Statutes (1977), defines "wire communication" as
"... any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception, furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of intrastate, interstate or foreign communications;"
It is clear that the tape recording in this case was not an interception of a communication transmitted by wire or cable furnished or operated by a common carrier. The defendants engaged in an "open air" conversation while using commercially-sold walkie-talkies or handie-talkies. John Sion heard the conversation by accident when he turned on his short-wave radio receiver. Sion was a private individual who lived in an apartment on the tenth floor of a highrise building near Picciolo's Restaurant, where the conversation of the defendants took place. He had purchased his short-wave-band radio receiver from a commercial retailer of electronic equipment.
At trial, defendant Chandler testified that he and defendant Granger staged a bogus burglary on the air as a part of a wager to see whether anyone was listening. The trial court correctly concluded from the testimony that the defendants did not exhibit a justifiable expectation that their conversation would remain private.
Even without this justification, we would hold that the intercepted conversation is not prohibited by Chapter 934, Florida Statutes (1977).
The third point presented urges that it was prejudicial error for the trial court to deny the defendants' offer into evidence of the condensed version of the taped conversation. It is argued that the condensed version was relevant because: (1) all voice identifications were made from it, and (2) the admission of the condensed version would have corroborated defendants' alibi defense.
Trial courts enjoy a certain discretion in the ruling on the admissibility of evidence. Simply because a defendant thinks that tendered evidence might be beneficial does not make its rejection reversible error. Cf. the principle of law in Rodriguez v. State, 327 So.2d 903 (Fla. 3d DCA 1976). Nevertheless, where evidence tends in any way, even indirectly, to prove a defendant's innocence, it is error to deny its admission. See Watts v. State, 354 So.2d 145 (Fla.2d DCA 1978). The true test then is whether the tendered condensed version of the taped conversation was relevant to the defense presented. The defendants have failed to present to the trial court or to this court any reasonable theory upon which the admission of the condensed version of the tape would have helped prove their defense. The defendants did not deny having the conversations over the air. The disputed issue was whether the conversations were connected with the robbery with which they were charged. The contents of the condensed version had no relevancy to that issue.
It is suggested that markings or an erasure on the body of the frame holding the tape might have helped prove that the first tape was not made on the night in question. Insofar as this speculative possibility is concerned, we find no error in the trial court's ruling. The alleged error complained of is not a limitation upon examination or cross-examination, but rather the failure to admit physical evidence.
The defendants' fourth point contends that they were entitled to a judgment of acquittal pursuant to their motion for a new trial because of the insufficiency of the evidence against them. We hold the evidence to be sufficient. It placed the defendants at the scene of the crime and the taped conversation tied them firmly to the crime as its perpetrators. The fourth point does not present error. See Lynch v. State, 293 So.2d 44, 45 (Fla. 1974).
*71 The defendants' fifth point deserves a more detailed consideration.[7] The defendants claim that they were deprived of the right of cross-examination and the introduction of evidence to show that one of the State's witnesses, Officer Hayes, was hostile to them. Defense counsel was allowed to develop his theory that Hayes was prejudiced against Chandler and Granger because they had once made a complaint concerning Hayes to their shift officer.[8] Also, during the presentation of the defendants' case, Officer Wilson was precluded from going further into the matter. We hold that the defendants were allowed sufficient latitude both in their cross-examination and direct examination to present the matter for full consideration by the jury. It may well be that defendants would have liked to give the matter greater prominence but the trial court's ruling was well within the range of the discretion granted to it by the holding of the Supreme Court of Florida in Eldridge v. State, 27 Fla. 162, 9 So. 448 (1891).[9] See also Welch v. State, 342 So.2d 1070 (Fla. 3d DCA 1977); Dabney v. Yapa, 187 So.2d 381 (Fla. 3d DCA 1966); and H.I. Holding Company v. Dade County, 129 So.2d 693 (Fla. 3d DCA 1961). And cf. Irvin v. State, 66 So.2d 288, 294-295 (Fla. 1953).
The sixth point claims error because there was no presentence investigation. See Florida Rule of Criminal Procedure 3.710. We hold that this rule is not applicable where the defendant specifically waives the investigation. See Rinaldi v. State, 343 So.2d 94 (Fla. 3d DCA 1977); and Johns v. State, 330 So.2d 526 (Fla. 1st DCA 1976). The defendants' suggestion that the waiver was "forced" is without foundation on this record.
Having considered each point presented and finding no reversible error, the judgments and sentences are affirmed.
Affirmed.
NOTES
[1] Count I  Conspiracy to Commit a Felony
 (a misdemeanor)
 Count II  Burglary (a felony)
 Count III  Grand Larceny (a felony)
 Count IV  Possession of Burglary Tools (a
 felony)

[2] In an earlier sworn statement, Sion had testified that he told Chief Investigator Martin Dardis of the state attorney's office that he had taped the conversation during the Memorial Day weekend.
[3] Prior to trial, the defendants filed a motion seeking to suppress the tape recording because no intercept order had been obtained and because of defendants had a reasonable expectation of privacy in their walkie-talkie conversations. The motion was denied.
[4] Each defendant was sentenced as follows:

Count I  one year imprisonment in the county jail.
Count II  five years imprisonment in the state penitentiary (to run from the date of the expiration of the sentence in Count I).
Count III  one year imprisonment in the state penitentiary and four years probation (to run from the expiration of the sentence imposed in Count II).
Count IV  five years probation (to run from the expiration of the sentence  and probation  imposed in Count III).
[5] the trial court erred in denying defendants' various motions to declare Experimental Canon 3A(7) unconstitutional in refusing to preclude television cameras from defendants' trial, and in declining to sequester the trial jury, all contrary to defendants' Sixth and Fourteenth Amendment rights to a fair and impartial trial and due process of law."
[6] "Whether the trial court erred in denying defendants' motion to suppress the tape recorded oral conversation where that conversation was intercepted and recorded in violation of Chapter 934, Florida Statutes (197[7])."
[7] Appellants' fifth point attempts to show a multiplicity of errors. It is as follows:

"Whether the trial court erred in restricting defense counsel's cross-examination of prosecution witnesses and in his direct examination of defense witnesses and exclusion of certain defense exhibits thereby precluding any meaningful confrontation of the evidence presented by the prosecution as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 16, of the Constitution of the State of Florida."
We confine ourselves to the point as argued in the brief.
[8] On cross-examination, Officer Hayes acknowledged that the defendant Chandler and Officer Wilson once complained that Hayes was taking coffee breaks and that Chandler, Wilson, and Hayes discussed the matter in a police car. Officer Hayes testified that he did not remember even the gist of the conversation. Officer Wilson was called as a witness by the defendant and after a lengthy discussion outside the jury's presence, the trial court did not permit defense counsel to inquire into the details of this informal complaint.
[9] * * * * *
"It is competent to show as a fact that a witness is hostile to the party against whom he testifies, and the jury can consider this hostility in estimating his testimony; but an inquiry into the conduct and acts of parties producing the hostility raises another and collateral issue, which should not be permitted to be gone into by the trial judge, otherwise there would be no limit to the investigation of any cause." 9 So. at 452.
* * * * * *