THE STATE, EX REL. COSMOS
BROADCASTING CORPORATION, D.B.A.
WTOL-TV TOLEDO 11, ET AL., *v.*
BROWN, JUDGE, LUCAS COUNTY COURT
OF COMMON PLEAS.

(No. L-84-209—Decided
June 11, 1984.)

*Mr. Thomas G. Pletz* and *Mr. Timothy C. McCarthy,* for relators.

*Mr. Anthony Pizza,* prosecuting attorney, and *Mr. James E. Yavorcik,* for respondent.

HANDWORK, J. This matter is before the court as an original action in which relators seek writs of mandamus and prohibition.

Relators are three Toledo-area television stations. Judge Lloyd O. Brown,[1] respondent herein, is the trial judge against whom relators seek the writs of mandamus and prohibition. Respondent is the presiding judge in a criminal case currently pending in the court below, *State* v. *Robert Bryant,* No. CR 84-5241. Bryant, the defendant, is charged with aggravated murder. His attorney, Terrence Jones, who will conduct the defense at trial, has been indicted for possession of cocaine, allegedly received as payment for defending Bryant.

The present action in this court arises from respondent's order of June 4, 1984, which denied relators' motion to broadcast, televise and record by electronic means the trial proceedings in the *Bryant* case. The order did not deny public or media access to the trial itself, but merely prohibited the in-court use of cameras, broadcast equipment or other electronic recording devices. The essential facts leading to respondent's June 4 order may be briefly stated.

On May 3, 1984, relators requested in writing respondent's permission to place a camera and cameraman in the courtroom where the *Bryant* trial would be held, once a jury was finally selected. On May 4, respondent summarily denied that request without a hearing. Later, on May 16 and 18, relators filed motions reiterating their requests for permission to use a single camera to film the trial. These motions also requested a hearing on the matter, but not until June 4 was one scheduled. At this hearing, counsel for relators informed the respondent judge that relators and their camera personnel, if granted permission to use their equipment, fully intended to adhere to the appropriate rules and restrictions for televising and recording criminal trials under Rule 11 of the Rules of Superintendence for the Courts of Common Pleas and Judicial Canon 3A(7) of the Code of Judicial Conduct.

During the hearing, the trial court asked for defense counsel's position on the motion. Counsel replied that his client did not wish his case to be televised, though he had "no particular reason" for opposing relators' motion. However, counsel also commented that his client felt "there [has been] enough publicity. He feels personally he has been disgraced enough, and he doesn't care to have any more television in the courtroom[.]" The prosecutor took no position either way.

After several additional comments from relators' counsel, the court proceeded to rule on the motion, stating in part:

"I've examined this question, not only today but on other occasions when the situation arose to determine whether or not in fact the televising of a trial to the public affects the fairness of that trial.

"* * *

"Of course the Court can only glean from its own experience and in reference to what has happened in past times when there was a permission or a denying of a permission for the media to broadcast."

The court referred to a Massa-

[1] Respondent, Lloyd O. Brown, J., of the Court of Common Pleas of Cuyahoga County, was sitting by assignment in the Court of Common Pleas of Lucas County.

chusetts gang-rape trial, commenting that the case had been televised and that someone wished to make it into a movie. The court continued:

"My personal experience came about when a local newspaper was permitted only to bring a camera into the courtroom inobstrusive in the rear, long focal plane lens, where photographs were taken of those persons that were witnesses. There were [*sic*] no taking of jurors' pictures. There was no taking of the broad array. But my personal experience is it did affect the testimony of each witness that testified when that person came before the Court."

Respondent then stated that thirteen newspaper articles had been published relating either to the *Bryant* case directly or to defense counsel's indictment for cocaine possession, allegedly received as payment for defending Bryant. The court characterized the case as "peculiar," noting also that defense counsel's trial on the cocaine charge was scheduled to begin after his client's trial. The court then concluded:

"It's going to be very difficult, I believe, in selecting a jury in this case to make sure that Mr. Bryant gets that fair tribunal. I do believe that based on the totality of the circumstances that any recording or photographs taken in this case would impair these proceedings and would not permit the defendant to have a fair trial. I believe that it would interfere in the defendant's ability to have a fair trial. So, the request of the television stations to televise this proceeding is denied."

The following day, June 5, relators commenced their action for writs of mandamus and prohibition in this court.

## I

Before proceeding to the merits of this case, a preliminary issue must be resolved. On June 7, 1984, respondent filed a motion to dismiss relators' complaint in mandamus and prohibition, asserting several grounds in support thereof. Only one of these grounds warrants serious consideration here.[2]

Respondent argues that relators' complaint is defective on its face for failing to comply with the statutory requirements for mandamus actions under R.C. 2731.04, which states, in pertinent part:

"Application for the writ of mandamus must be by petition, in the name of the state on the relation of the person applying, and verified by affidavit. * * *"

The caption portion of relators' first amended complaint fails to aver that the action is brought "in the name of state on the relation of the [party] applying" for the writ. That failure alone has been held to be sufficient ground for denying the writ and dismissing the petition (or the complaint). See *Maloney* v. *Court of Common Pleas* (1962), 173 Ohio St. 226 [19 O.O.2d 45]; *Ort* v. *Hutchinson* (1961), 114 Ohio App. 251 [19 O.O.2d 159]. Also, relators failed to identify themselves as corporate entities in the caption. However, on June 7, 1984, relators filed a motion to amend their first amended complaint to comply with R.C. 2731.04. Inasmuch as the Civil Rules apply to mandamus actions, see

---

[2] As a secondary basis for dismissing the complaint, respondent argues that relators lack *standing* to proceed in mandamus and prohibition, having failed to allege sufficient facts from which an injury, or the likelihood of it, can be established. In reviewing relators' complaint, we find that it sets forth sufficient facts, including facts reasonably inferred from those expressly stated, from which to conclude that relators have standing to commence their original action in mandamus and prohibition. See *State, ex rel. Dayton Newspapers,* v. *Phillips* (1976), 46 Ohio St. 2d 457, 459-460 [75 O.O.2d 511]; *State, ex rel. Dispatch Printing Co.,* v. *Golden* (1982), 2 Ohio App. 3d 370, 372-373.

*State, ex rel. Millington,* v. *Weir* (1978), 60 Ohio App. 2d 348 [14 O.O.3d 310], and Civ. R. 8, 10 and 15 allow for liberal construction and amendment of the pleadings, it would appear that technical rules of form should not ordinarily obstruct a merit determination of the substantive issues. That, we will proceed to do. Accordingly, respondent's motion to dismiss relators' complaint herein is not well-taken, and the same is hereby denied.[3]

## II

As set forth in *State, ex rel. Consolidated Rail Corp.,* v. *Gorman* (1982), 70 Ohio St. 2d 274, 275 [24 O.O.3d 362]:

"A writ of mandamus may issue only where the relator shows (1) a clear legal right to the relief prayed for, (2) a clear legal duty upon respondent to perform the act requested, and (3) that relator has no plain and adequate remedy in the ordinary course of the law. [Citations omitted.]"

A writ of prohibition will lie only when the relator establishes (1) that the court or officer against whom the writ is sought is about to exercise judicial or quasi-judicial power; (2) that the exercise of that power is unlawful; and (3) that a refusal of the writ will result in an injury for which there exists no adequate remedy at law. See *State, ex rel. Chillicothe Gazette, Inc.,* v. *Court* (1982), 2 Ohio St. 3d 24; see, also, *State, ex rel. Greater Cleveland Regional Transit Auth.,* v. *Guzzo* (1983), 6 Ohio St. 3d 270, and *State, ex rel. Rose Hill Burial Park,* v. *Moser* (1982), 1 Ohio St. 3d 13.

The "adequate remedy at law" condition of both writs is quite clearly met in this case. Any appeal to this court after judgment would most likely be moot, or, worse yet, it would be a futile gesture in terms of newsworthiness,

even if successful, for the trial would be long over. As the Ohio Supreme Court recently stated in *State, ex rel. Chillicothe Gazette, Inc.,* v. *Court, supra,* at page 25:

"* * * [O]nly an extraordinary remedy will afford [relators] adequate relief inasmuch as time is of the essence where news value is concerned. Even a successful appeal on the issue raised herein would be of no value to [relators]."

As it stands, relators face a "Hobson's choice" in the trial court, and the alternatives are not enviable. Relators can either violate the court's order, thereby risking contempt, or acquiesce in what is arguably an unconstitutional and unlawful act. See *State, ex rel. Beacon Journal Pub. Co.,* v. *Kainrad* (1976), 46 Ohio St. 2d 349, 355 [75 O.O.2d 435]. Also clear is the fact that respondent has exercised judicial power — and, unless a writ issues, he will continue to exercise it to enforce his ban on coverage of the trial by the electronic media. Finally, if respondent's act is shown to be unlawful, or is shown to be a violation of a clear legal duty, relators will be entitled to the relief sought. To that issue we now turn.

## III

### A

C.P. Sup. R. 11 provides, in relevant part:

"(A) Presiding Judge. The judge presiding at the trial or hearing *shall* permit the broadcasting or recording by electronic means and the taking of photographs in court proceedings open to the public as provided in Canon 3A(7) of the Code of Judicial Conduct. * * *"

Canon 3A(7) of the Code of Judicial Conduct provides, in pertinent part:

[3] At the hearing held before this court on June 7, 1984, we orally granted relators' motion to amend the caption of their first amended complaint. A journal entry to this effect was thereafter filed on June 11, 1984.

"(7) A trial judge or appellate court should permit:

"* * *

"(b) the broadcasting, televising, recording or photographing of investitive, ceremonial, or naturalization proceedings; and

"(c) the broadcasting, televising, recording and taking of photographs in the courtroom by news media *during sessions of the court,* including recesses between sessions, under the following conditions:

"* * *

"(ii) the trial judge or appellate court determines, upon consideration of a request for permission for the broadcasting, televising, recording, or taking of photographs in the courtroom in a particular case, that the broadcasting, televising, recording, and taking of photographs would not distract participants or impair the dignity of the proceedings or otherwise materially interfere with the achievement of a fair trial or hearing therein[.]"

In *State, ex rel. Grinnell Communications Corp.,* v. *Love* (1980), 62 Ohio St. 2d 399 [16 O.O.3d 434], the Ohio Supreme Court held that C.P. Sup. R. 11 and Canon 3A(7) are mandatory directives for trial courts in Ohio, *not* discretionary guidelines which the courts are free to disregard. *State, ex rel. Grinnell Communications Corp.,* v. *Love, supra,* at 401. The rule and the canon *"are the law of this state."* (Emphasis added.) *Id.* at 403. In *State, ex rel. Broadcasting Corp.,* v. *Kessler* (1980), 64 Ohio St. 2d 165 [18 O.O.3d 383], the Supreme Court again emphasized that trial courts must permit the electronic media to record and broadcast criminal trials, unless a disqualifying factor in Canon 3 militates against doing so. Thus, if the trial participants would be distracted, the dignity of trial proceedings impaired or a fair trial compromised, broadcasting may be denied. But the denial of broadcast coverage is

not to be lightly invoked, since Ohio law — through the rule and the canon — presumes "that news coverage of a court proceeding is *not per se* inconsistent with a fair and impartial trial." (Emphasis in original.) *State, ex rel. Grinnell Communications Corp.,* v. *Love, supra,* at 401. Ohio law, therefore, embodies a presumption of fairness, and the trial court's responsibility is to scrutinize *the facts before it* to determine if that presumption is rebutted by the presence of a disqualifying factor. This court has already committed itself to the presumption of fairness embodied in C.P. Sup. R. 11 and Canon 3A(7). See *State* v. *Rogers* (Mar. 10, 1984), Lucas App. No. L-82-344, unreported.

If the trial court fails to make an adequate determination, Ohio law *requires* that broadcast coverage by the electronic media be permitted. In the *Kessler* case, the Supreme Court held that the trial court can properly determine the presence of a disqualifying factor only if it holds a hearing on the issue of coverage at which those against the proposed broadcast coverage as well as those in favor of it can present their evidence and argue their respective positions. See *State, ex rel. Broadcasting Corp.,* v. *Kessler, supra,* at 167. Otherwise, any order excluding the electronic media from the trial "would merely represent the personal predilections of the presiding judge." *Id.* In so holding, the *Kessler* court quoted approvingly certain language from *Palm Beach Newspapers* v. *State* (Fla. App. 1979), 378 So. 2d 862, in which the court stated, in part:

" "* * * [T]he party moving for a limitation on coverage would seem to have the burden of adducing some credible evidence necessitating the limitation[.]' " *State, ex rel. Broadcasting Corp.,* v. *Kessler, supra,* at 168.

Here, respondent held a hearing on relators' motion, though not until some nineteen days after it was filed. We have

thoroughly reviewed the transcript from that hearing. Respondent's conclusory "finding" that the defendant's fair trial rights would be compromised by electronic coverage of the trial is woefully lacking in firm evidentiary support. Respondent's "personal experiences" are not evidence, and they are certainly not valid considerations in evaluating whether a disqualifying factor is present in a particular case. Respondent's reference to numerous news articles and TV newscasts regarding the *Bryant* trial is also inadequate. The fact that a case has received some publicity has never been a decisive factor. See, *e.g., Westchester Rockland Newspapers, Inc.* v. *Leggett* (1979), 48 N.Y. 2d 430, 423 N.Y. Supp. 2d 630, 399 N.E. 2d 518; see, also, *State, ex rel. Dayton Newspapers,* v. *Phillips* (1976), 46 Ohio St. 2d 457, 468-469 [75 O.O.2d 511]. The trial court cannot assume, based upon previous publicity about the case, that further news coverage would materially compromise the possibility of a fair trial or otherwise impair the dignity of the proceedings. To do so would allow trial courts to ignore what the Supreme Court has already determined is a presumption of fairness:

"* * * By adopting [the rule and the canon] in their present form, this court has posited that it is presumed that news coverage of a court proceeding is *not per se* inconsistent with a fair and impartial trial. This is a *sine qua non* for this court to have approved such coverage. On the other hand, it is precisely this presumption of fairness that the lower court has questioned and found to be lacking. However, since this court has already given credence to this presumption of regularity, it is not within the prerogative of a trial court to call the validity of this presumption into question[.]" *State, ex rel. Grinnnell Communications Corp.,* v. *Love, supra,* at 401.

Finally, respondent judge has char-acterized the *Bryant* case as "peculiar" because the defendant's attorney is himself under indictment on drug charges stemming from matters interrelated with his client's case. Respondent's counsel has argued that this creates a "partners-in-crime" image, which, if broadcasting is allowed, will preclude or seriously impair the prospect of a fair trial for the defendant.

First, even conceding that this circumstance is unusual, and thus that caution is warranted here, no party arguing against broadcast coverage has shown any evidence whatsoever that alternatives to excluding the electronic media from the courtroom would fail to secure a fair trial. The trial court must first exhaust all other *less restrictive measures* to determine if a fair trial can be had before denying broadcast coverage under C.P. Sup. R. 11 and Canon 3A(7). See *State, ex rel. Beacon Journal Pub. Co.,* v. *Kainrad, supra,* at 352; see, also, *State, ex rel. Dispatch Printing Co.,* v. *Golden* (1982), 2 Ohio App. 3d 370, 373-374. Only by proceeding in this manner can any decision on whether to permit broadcast coverage be consistent with the "presumption of fairness" that the Supreme Court has held to be the law of Ohio. *State, ex rel. Grinnell Communications Corp.,* v. *Love, supra.*

Second, the fact that media coverage of the *Bryant* trial might enhance public knowledge of defense counsel's "predicament" is insufficient, standing alone, to constitute a disqualifying factor. In this respect, the problem lies not with the electronic media's desire to cover the trial, but with defense counsel's decision to remain on the case and respondent's (apparent) approval of that decision.

Thus, nothing in the record before us justifies excluding the electronic media from the trial. As such, the challenged order represents nothing more than the mere "personal predilections of the presiding judge," which are

forbidden as a basis on which to deny broadcast coverage. *State, ex rel. Broadcasting Corp.,* v. *Kessler, supra,* at 167. As noted earlier, the *Kessler* court has approved the Florida rule that "the party moving for a limitation on coverage [has] the burden of adducing some credible evidence necessitating the limitation[.]" *Id.* at 168. In light of the circumstances in this case, we hold that absent a *clear and convincing* evidentiary basis in the record for finding or concluding that one of the disqualifying factors stated in Canon 3A(7)(c)(ii) is present, electronic news coverage in a criminal case *must be permitted,* subject only to the conditions and limitations of C.P. Sup. R. 11 and Canon 3A(7)(c)(i), (iii) and (iv). The trial court simply has no further discretion in the matter.

### B

Inasmuch as counsel for respondent has claimed that there is no *constitutional* issue in this case, we will briefly address that suggestion. In *Chandler* v. *Florida* (1981), 449 U.S. 560, the United States Supreme Court held that:

"* * * *Estes* [v. *Texas* (1968), 381 U.S. 532] is not to be read as announcing a constitutional rule barring still photographic, radio, and television coverage in all cases and under all circumstances. It does not stand as an absolute ban on state experimentation with an evolving technology, which, in terms of modes of mass communication, was in its relative infancy in 1964, and is, even now, in a state of continuing change." *Id.* at 573-574.

Thus, there is no *per se* constitutional prohibition against electronic news coverage of courtroom proceedings in a criminal case.

Perhaps more importantly, the Supreme Court has unequivocally held that, under the First Amendment, the press and public are guaranteed a right of access to criminal trials. See *Richmond Newspapers, Inc.* v. *Virginia* (1980), 448 U.S. 555; see, generally, Schmollinger, A Foot in the Government's Door — Access Rights of the Press and Public (1981), 12 U. Tol. L. Rev. 991. As applied to members of the so-called "print media," *i.e.,* newspapers, news magazines and the like, there is no question that a constitutional right of access suffices to safeguard adequately their ability to report what goes on in the courtroom. Here, however, the context is slightly different. Members of the *electronic* news media are not themselves being denied access to respondent's courtroom, but their technology for effectively covering the *Bryant* trial *is* being excluded. Respondent's order, therefore, is rife with constitutional implications. In *Houchins* v. *KQED, Inc.* (1978), 438 U.S. 1, 17, Justice Stewart, concurring, stated:

"* * * [T]erms of access that are reasonably imposed on * * * the public may, if they impede *effective* reporting without sufficient justification, be unreasonable as applied to journalists who are there to convey to the general public what the visitors see." (Emphasis added.)

In practice, of course, what goes on in a courtroom can only be *effectively* reported if the technology for doing so is permitted to be used. Thus, if the print media, with its pens, pencils and notepads, have a right of access to a criminal trial, then the electronic media, with its cameras, must be given *equal* access too. "The public and the victims of crime are entitled to know what is going on. The public is entitled to know what is happening to the accused. There is no other way the busy ordinary citizen can evaluate how the judicial system is administering justice except through the media he reads, hears or watches." *State, ex rel. Dayton Newspapers,* v. *Phillips, supra,* at 467.

Consequently, under the First Amendment, the concept of equal access to courtroom proceedings and the effec-

tive reporting of courtroom events means at least this: unless there is an overriding consideration to the contrary, clearly articulated in the trial court's findings, representatives of the electronic news media must be allowed to bring their technology with them into the courtroom, even if only to a small degree (*e.g.*, a single camera; see C.P. Sup. R. 11[B][1]).

## IV ·

For the reasons previously expressed, respondent's denial of relators' motion to broadcast, televise or otherwise electronically record trial proceedings following jury selection in the *Bryant* case was an unlawful act and a violation of a mandatory legal duty under C.P. Sup. R. 11 and Canon 3(A)(7). Accordingly, the following writs shall issue:

1. A writ of prohibition shall immediately issue prohibiting respondent herein from enforcing his order of June 4, 1984, in the case of *State v. Robert Bryant,* Lucas County Court of Common Pleas, CR 84-5241.

2. A limited writ of mandamus shall immediately issue directing respondent herein to permit the requested coverage of *State* v. *Robert Bryant* by relators in accordance with the rules and limitations set forth in C.P. Sup. R. 11 and Canon 3A(7)(c)(i), (iii) and (iv).

It is so ordered.

*Writs allowed.*

CONNORS, P.J., concurs.

RESNICK, J., dissents.

RESNICK, J., dissenting. I must respectfully dissent from the majority opinion. While I recognize that C.P. Sup. R. 11 and Canon 3A(7) place a mandatory duty on the trial court to permit television broadcasting in the courtroom, the trial court must nevertheless make a determination that it would not distract the participants or impair the dignity of the proceedings or otherwise materially interfere with the achievement of a fair trial.

In making this determination, the Ohio Supreme Court, in the case of *State, ex rel. Broadcasting Corp.,* v. *Kessler* (1980), 64 Ohio St. 2d 165 [18 O.O.3d 383], stated at page 168:

"* * * Therefore, the party moving for a limitation on coverage would seem to have the burden of adducing *some credible evidence* necessitating the limitation, * * *." (Emphasis added.)

The Ohio Supreme Court has therefore set down a standard of proof from which this court should not and cannot vary. Yet the majority, by its ruling of today chooses to disregard the prescribed standard to which we are bound and impose its own standard of "clear and convincing evidence." The only rationale put forth by the majority in doing so is stated at page 382:

*"In light of the circumstances in this case,* we hold that absent a *clear and convincing* evidentiary basis * * *."* (Emphasis added.)

Query, under what circumstances would the rule in *Kessler, supra,* be followed by this court? A ruling rationalized by such a statement in effect leaves the decision as to whether to impose limitations to the personal predilections of appellate judges.

In this case, the trial court had before it the evidence presented at the hearing and the entire file containing the preliminary motions filed in the case below. Contained in the file was a motion to disqualify defense counsel, which was made an exhibit in this court. As part of this motion were all of the facts and circumstances concerning defense counsel's alleged criminal activity with defendant Bryant, which led to the indictment of the attorney and defendant on felony drug charges. In addition to all of this information concerning defense

counsel's alleged criminal involvement with the defendant, the court had before it all of the prior media coverage regarding defense counsel and his alleged criminal activities.

At the conclusion of the hearing, the trial court made several statements, some of which, admittedly, were based on his prior personal experience. However, the real basis of his decision could not be mistaken. It was his apprehension of the "peculiar" nature of the circumstances wherein defense counsel was indicted for drug violations, which allegedly stem from his relationship with the defendant in this case who is on trial for his life and that the drug violation trial is scheduled to begin shortly after the instant case.

At the conclusion of the hearing, the trial court stated:

"It's going to be very difficult, I believe, in selecting a jury in this case to make sure that Mr. Bryant gets that fair tribunal. I do believe that *based on the totality of the circumstances* that any recording or photographs taken in this case would *impair these proceedings* and *would not permit the defendant to have a fair trial.*" (Emphasis added.)

Thus the trial court, from the evidence it had before it, found two of the disqualifying factors as set forth in Canon 3A(7)(c)(ii).

The only question to be resolved by this court is whether the record contains "some credible evidence" pursuant to the dictates of *Kessler, supra,* to overcome the presumption of fairness set forth in *State, ex rel. Grinnell Communications Corp.,* v. *Love* (1980), 62 Ohio St. 2d 399 [16 O.O.3d 434]. I find that under the applicable standard, the judgment of the court below should not be disturbed.

The word "credible" simply means "believable." The evidence that the court considered was not only be-

lievable, but fact. Having found that the facts necessitated the limitation the court imposed, can this court substitute its own judgment for that of the trial court? I submit that we cannot.

There are three requirements which must be met before a writ of prohibition lies, as set forth in the case of *State, ex rel. Dow Chemical Co.,* v. *Court* (1982), 2 Ohio St. 3d 119, 120:

"1. The court or officer against whom it is sought is about to exercise judicial or quasi-judicial power; (2) *the exercise of such power is unauthorized by law*; and (3) it will result in injury for which no other adequate remedy exists." (Emphasis added.)

The power exercised by the court below was within his authority under the standards and requirements set by the Ohio Supreme Court in *Kessler, supra,* C.P. Sup. R. 11 and Canon 3A(7). Therefore, a writ of prohibition does not lie and I would deny same.

As to the writ of mandamus, based upon the hearing held and the evidence the trial court had before it, I cannot say that, in this case, there was a clear legal duty for the respondent to perform the act requested in the writ of mandamus and I would, therefore, deny same.

The majority opinion, for whatever reason, implies that the trial court was exercising judicial discretion in making its decision and, therefore, finds that its determination was inadequate. Yet the trial court held a hearing as required by law, had evidence presented and made a specific determination as required by law. There being an applicable standard as set forth in *Kessler, supra,* the majority cannot review this case with an assumption that the lower court did not consider the standard in making its decision.

For all of the foregoing reasons, I would deny both the writ of prohibition and the writ of mandamus.