**Joseph HUTCHISON, Petitioner,**

v.

**R.C. MARSHALL, Warden, Respondent.**

No. C–3–83–006.

United States District Court,
S.D. Ohio, W.D.

Oct. 20, 1983.

Thomas A. Schaffer, Dayton, Ohio, Joel Hirschhorn, Miami, Fla., for petitioner.

Karen A. Kolmacic, Asst. Atty. Gen., Columbus, Ohio, for respondent.

## DECISION AND ENTRY DISMISSING PETITION FOR WRIT OF HABEAS CORPUS; TERMINATION ENTRY

RICE, District Judge.

## I. INTRODUCTION

This case, a petition for writ of habeas corpus brought by a state prisoner pursuant to 28 U.S.C. § 2254, presents novel and interesting questions concerning the alleged infringement of an accused's right to a speedy trial by certain actions taken by three local television stations. Having received Respondent's Return of Writ (doc. # 8), this matter is currently before the Court to "determine whether an evidentiary hearing is required" and if not, to "make such disposition of the petition as justice shall require." 28 U.S.C. § 2254, Rule 8(a). Oral argument was heard on the petition on May 19, 1983.

■ A review of the record reveals the following facts, which are not disputed by the parties.[1] On May 27, 1980, the Montgomery County (Ohio) Grand Jury returned an indictment against Petitioner, charging him with one count of aggravated burglary, in violation of Ohio Rev.Code Ann. § 2911.11(A)(3), one count of felonious assault, in violation of Ohio Rev.Code Ann. § 2903.11(A)(1), and one count of aggravated murder, in violation of Ohio Rev.Code Ann. § 2903.01(B). Upon arraignment, Petitioner entered pleas of not guilty and not guilty by reason of insanity, and the case was set for a jury trial.

On August 21, 1980, Petitioner filed a motion to exclude television cameras from the courtroom during his upcoming trial. Such coverage of trials by the broadcast media is permissible, subject to restrictions which *may* be imposed by a trial judge, under Ohio Rule of Superintendence 11 and Canon 3 A(7)(c) of the Code of Judicial Conduct. *See State ex rel. Grinnell Communications Corp. v. Love*, 62 Ohio St.2d 399, 406 N.E.2d 809 (1980) (per curiam). The trial judge held evidentiary hearings on the motion on September 9th and 12th (1980), which apparently consisted primarily of the testimony, and cross-examination, of a psychologist. On September 22, 1980, the trial judge sustained the motion, on the basis that the television coverage would adversely affect Petitioner's conduct in open court. *See State ex rel. Miami Valley Broadcasting Corp. v. Kessler*, 64 Ohio

---

**1.** Of course, under 28 U.S.C. § 2254(d), the factual determinations of a state court are, with certain exceptions, presumed to be correct by federal habeas courts. *Marshall v. Lonberger*, —— U.S. ——, 103 S.Ct. 843, 849–50, 74 L.Ed.2d 646 (1983); *Adams v. Jago*, 703 F.2d 978, 979 (6th Cir.1983). Here, Petitioner does not attack any *factual* findings made by the state courts, and the issues presented by his writ are essentially questions of law.

St.2d 165, 166, 413 N.E.2d 1203, 1204 (1980) (per curiam).

Three local television stations [2] then filed proceedings in mandamus and in prohibition in the Ohio Supreme Court on September 25, 1980, seeking to overturn the trial judge's decision. The Supreme Court temporarily granted the writ on September 30, 1980, the day the judge began selecting a jury for petitioner's trial. The trial judge then continued the case. He subsequently journalized an entry to that effect on November 13, 1980. Motions to dismiss the petition for writs by the trial judge and by the Petitioner, as intervenor, were denied by the Supreme Court on October 29.[3]

On December 23, 1980, the Ohio Supreme Court issued a decision on the merits, continuing the writ of prohibition, and ordering the trial judge to conduct a new and more complete evidentiary hearing on the issue of television coverage. *State ex rel. Miami Valley Broadcasting Corp. v. Kessler, supra.* On December 30, 1980, Petitioner first raised the issue of the denial of his rights to a speedy trial (under the Sixth Amendment to the Constitution, and Ohio law) before the trial judge, moving to discharge the indictment on those grounds.

While the trial judge held the new evidentiary hearing on January 17, 1981, the television stations presented no additional evidence. The judge again adopted his previous ruling, excluding broadcast coverage of the trial. In fact, no such coverage occurred. A jury trial commenced on January 26, 1981, on which day the trial judge overruled Petitioner's motion. The jury convicted Petitioner of aggravated murder and felonious assault on February 6, 1981, and he was sentenced on March 5, 1981, to a life term for the former offense and 3 to 15 years for the latter offense, both terms to be served consecutively.

Petitioner appealed the judgment of conviction to the Ohio Court of Appeals for the Second District, in which he raised, *inter alia*, the errors that his rights to a speedy trial (under the Sixth Amendment to the Constitution and Ohio Rev.Code Ann. § 2945.71) and to due process (under the United States and Ohio Constitutions) had been violated by the delay in his trial. The appellate court affirmed the conviction and rejected the above-stated claims, holding that "the record in this case demonstrates the necessity and reasonableness of the continuance of the trial from October 1, 1980 to January 26, 1981." *Ohio v. Hutchison*, Case No. CA7228 (Ct.App. Montgomery County, December 11, 1981), slip op. at 5. Petitioner then appealed to the Ohio Supreme Court, which dismissed the appeal on March 24, 1982, as lacking a substantial constitutional question. He thereafter filed this habeas petition.

## II. DISCUSSION

In this Court, Petitioner alleges that the aforementioned conduct of his trial violated his rights to a speedy trial, to due process, and to equal protection. These assertions are considered seriatim.

### A. SIXTH AMENDMENT RIGHT TO A SPEEDY TRIAL

The Sixth Amendment to the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." This right is deemed to be "fundamental" and is imposed in the states by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1 (1967). The Supreme Court has identified four factors which are particularly probative in evaluating whether the right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay, (3) the defendant's asser-

---

2. The three are Grinnell Communications Corp. (WDTN–TV), Miami Valley Broadcasting Corp. (WHIO–TV), and Springfield Television Corp. (WKEF–TV).

3. Petitioner now argues that the Ohio Supreme Court never ruled on his motion. Petitioner's Response to Respondent's Return of Writ, doc. # 8, p. 5. Based on the Supreme Court's published decision in his case, this appears to be incorrect.

tion of his right, and (4) prejudice to the defendant.

*Cain v. Smith,* 686 F.2d 374, 381 (6th Cir. 1982) (citing *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)).

As the parties emphasize, this case presents the speedy trial issue in a unique fact situation, and they have not cited (nor has the court found) any published case law even remotely analogous. *Cf. Geagan v. Gavin,* 181 F.Supp. 466, 471 (D.Mass. 1960) (Wyzanski, J.) (habeas case presenting similar facts, but speedy trial issue not reached), *aff'd,* 292 F.2d 244 (1st Cir.1961), *cert. denied,* 370 U.S. 903, 82 S.Ct. 1247, 8 L.Ed.2d 399 (1962). Despite the uniqueness of the fact pattern, the Court agrees with Respondent that the *Barker v. Wingo* criteria are the most appropriate tests to measure of the validity of Petitioner's Sixth Amendment claims.

Regarding the first criterion, some eight (8) months elapsed between Petitioner's indictment and his trial; about four of those months were due to the resolution of the broadcast coverage controversy. The delay factor is to some extent a "triggering mechanism," and the delay must be "presumptively prejudicial" to even bring the remaining three factors into play. *Barker v. Wingo,* 407 U.S. at 530, 92 S.Ct. at 2192. "Whether the delay is presumptively prejudicial is principally determined by the nature and complexity of the crime." *Cain v. Smith,* 686 F.2d at 381. Here, the charges against Petitioner were indeed "very serious", Respondent's Return of Writ, doc. # 7, p. 13, but the trial does not appear to have been overly complex. Quite frankly, the trial was set to commence four months after the indictment; the remaining time, of course, was *not* due to preparation for trial by either side. While the issue is close, the Court will assume that the eight-month delay was presumptively prejudicial.

■ The second factor—the reasons for the delay—will turn largely on the prosecution's efforts to try the accused. *Cain v. Smith,* 686 F.2d at 382–83. Here, Respondent points out that Petitioner's motion on August 21, 1980, triggered the broadcast coverage controversy, and concludes that "the entire period of delay involved is chargeable to" Petitioner. Respondent's Return of Writ, doc. # 7, p. 14. The Court cannot agree. It is perhaps true, in the proximate cause sense, that the delay from October, 1980 through January, 1981 would never have occurred had not Petitioner moved to exclude broadcast coverage of his trial. But that period of delay is, in fact, attributable to the three television stations and the Ohio Supreme Court, not to *either* Petitioner or Respondent. There is simply no indication in the record, or in the arguments of counsel, that the prosecution "caused" or "allowed" this delay to occur, to prejudice Petitioner or for any other reason.

The third factor—Petitioner's assertion of his speedy trial right—will depend on the "timeliness, vigor, and frequency with which the right" is asserted. *Cain v. Smith,* 686 F.2d at 384. Here, Petitioner formally asserted his speedy trial rights on December 30, 1980, *after* the Ohio Supreme Court's decision on the merits, and with only about one month of the entire time of delay left. However, Petitioner did raise this issue in his unsuccessful motion to dismiss or intervene in the broadcaster's writ to the Ohio Supreme Court, which motions were denied in late October. Given the pendency of the action in the Ohio Supreme Court, it is perhaps understandable that Petitioner's counsel did not assert the right before the trial court until the Supreme Court's decision. Accordingly, Petitioner was not dilatory in raising his speedy trial rights.

Finally, the existence of prejudice to an accused will depend on the extent of his pretrial incarceration, his anxiety and concern, and the impairment of his defense. *Cain v. Smith,* 686 F.2d at 384–85. Here, as Respondent emphasizes, Petitioner has made no assertion of *any* sort of prejudice occurring to him as a result of the delay. While "an affirmative showing of prejudice is not necessarily a prerequisite to establishing a speedy trial violation," *id.* at 384

n. 14, the Court must hold that the complete absence of any assertion of prejudice weighs in favor of Respondent.

■ None of the four *Barker v. Wingo* factors, taken alone, are dispositive, and they should be considered together. *Id.* at 381 n. 12. The Court finds that the first and third factors weigh moderately in Petitioner's favor, while the second and fourth factors weigh in Respondent's favor, the latter heavily so. Balancing these factors, and emphasizing the apparent lack of prejudice suffered by Petitioner, the Court holds that his right to a speedy trial under the Sixth Amendment was not infringed.

### B. DUE PROCESS AND EQUAL PROTECTION

Petitioner also argues that the Ohio courts "arbitrarily" denied him his "previously recognized procedural rights" under the Ohio Speedy Trial Act, thus denying him due process and equal protection.[4] Response to Respondent's Return of Writ, doc. # 8, p. 4. It is not clear how such allegations differ from his speedy trial claim under the Sixth Amendment. In any event, the Court cannot adopt Petitioner's position.

■ As the Court views it, Petitioner's arguments are nothing more than a disagreement with how the Ohio appellate courts dealt with (and rejected) his efforts to prevail under an Ohio statute, the state Speedy Trial Act. The federal habeas statute, of course, is limited to *federal* claims, that is, alleged violations "of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). It is thus settled "that errors in application of state law … are usually not cognizable in federal habeas corpus [unless there is] a denial of fundamental fairness…." *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.1983). The concept of fundamental fairness may be difficult to apply on these facts, but however it is defined, the Court finds that

it was not breached here. Even assuming, without deciding, that the state courts committed error in applying the Ohio Speedy Trial Act, any prejudice resulting therefrom would seem to overlap with the concerns of the speedy trial right found in the Sixth Amendment. Having decided, *supra,* that Petitioner's Sixth Amendment rights were not violated, it follows that he was not denied "fundamental fairness".

■ Nor do Petitioner's due process and equal protection claims, taken alone, survive scrutiny. It is true that, as the Sixth Circuit has stated in a habeas case involving alleged violations of the Ohio Speedy Trial Act, "where a state adopts its own rules or standards … the state must obey due process in applying or deviating from these rules." *Johnson v. Overberg,* 639 F.2d 326, 327 (6th Cir.1981) (per curiam). In this case, even assuming that the state "deviated" from a proper application of the Ohio Speedy Trial Act, due process was amply afforded Petitioner, in that he was able to present his objections on that score to the Ohio appellate courts. Nor are any equal protection concerns violated, since Petitioner has simply not adequately alleged that he was treated differently by the state from any other person or persons.

Two cases cited by Petitioner do not change this result. In both *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980) and *Paul v. Davis,* 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976), the Supreme Court held that arbitrary denials of rights created by state law could constitute violations of due process. No such "arbitrary denials" took place in this case. The state courts held that petitioner's rights under the Ohio Speedy Trial Act were *not* denied. Even if that conclusion is incorrect, petitioner's rights to procedural or substantive due process were not ignored, since he had an opportunity to present his arguments to the state courts and, as the Court observed

---

4. It is not clear from the record whether Petitioner presented his equal protection argument to the state courts. Such a failure, of course, could mandate dismissal of the petition, in whole or in part. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1195, 71 L.Ed.2d 379 (1982); *Bowen v.*

*Tennessee,* 698 F.2d 241 (6th Cir.1983) (en banc). However, given that *all* of Petitioner's constitutional claims are factually and legally intertwined, the Court will not consider his equal protection claim to be unexhausted.

501

above, any "denial" of state-created rights did not result in a breach of "fundamental fairness."

For all of these reasons, the Court rejects Petitioner's constitutional claims.

## III. CONCLUSION

While the Court must dismiss Petitioner's writ, it is not without sympathy to his claims. In his memoranda, Petitioner complains bitterly about third parties to his trial—the television stations—riding roughshod over his rights to a speedy trial. What authority, he asks, did the stations have to do this, and why did the state "allow" it to happen?

This Court, in ruling on Petitioner's writ, must deal with the actions of the state; the "authority" for the actions by the broadcast stations is simply irrelevant.[5] It should be noted, however, that their actions were legitimate, in the constitutional sense, as an exercise of their First Amendment right (subject to certain restrictions) to televise criminal trials. *Chandler v. Florida,* 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981). The Supreme Court has "balanced" this First Amendment right of the press against the accused's Sixth Amendment right to a *fair* trial, by directing trial judges to make factual inquiries in each case as to any prejudice or unfairness which might accrue as a result of coverage. *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 580–81, 100 S.Ct. 2814, 2829, 65 L.Ed.2d 973 (1980). A similar "balance" would seem to be appropriate to govern a clash between the First Amendment and the Sixth Amendment right to a *speedy* trial, through use of the *Barker v. Wingo* criteria.

Petitioner's disgust with the media in this case is, perhaps, understandable. However, the importance of the media's access to criminal and civil trials in this

country, *see Brown & Williamson Tobacco Corp. v. F.T.C.,* 710 F.2d 1165, 1178–79 (6th Cir.1983), means that, in some cases, media coverage may impose burdensome and even unpleasant conditions on the trial participants. *Cf. New York Times Co. v. Sullivan,* 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964). The television stations' disruption of the time of trial may have been unpleasant for the trial participants, but it did not amount to a deprivation of Petitioner's constitutional rights.

For these reasons, the Court dismisses Petitioner's writ in its entirety. No factual issues being present, footnote one, *supra,* and Petitioner having failed to allege prejudice, an evidentiary hearing is unnecessary. *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Cain v. Smith,* 686 F.2d at 380 & n. 10.

This case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

5. In reality, Petitioner appears to be asking the Court to prevent *private* entities from interfering with his trial in a *state* court. It is doubtful that a federal habeas proceeding presents the proper forum for such an action, even if a court were so inclined to take it. Such questions, at least at the habeas level, are best examined under the second of the *Barker v. Wingo* criteria (reason for the delay).