Joseph **HUTCHISON,**
Petitioner-Appellant,

v.

**R.C. MARSHALL,** Superintendent,
Respondent-Appellee.

No. 83–3890.

United States Court of Appeals,
Sixth Circuit.

Argued July 17, 1984.
Decided Sept. 28, 1984.

Thomas A. Schaffer (lead) (argued), Dayton, Ohio, Joel Hirschhorn, Miami, Fla., for petitioner-appellant.

Christine Manuelian, Asst. Atty. Gen. (argued), Columbus, Ohio, for respondent-appellee.

Before MERRITT and KENNEDY, Circuit Judges, and ALLEN, District Judge.*

MERRITT, Circuit Judge.

This post-conviction, habeas corpus action raises questions regarding rights and remedies available to the criminal defendant whose trial is delayed against his wishes while television stations attempt through appellate review to obtain the right to televise his trial. Reserving judgment on the issue of pretrial habeas corpus relief in such cases, a question not before us, we hold that post-conviction relief is not appropriate in this case.

**I.**

Petitioner, Joseph Hutchison, was indicted by an Ohio grand jury on May 27, 1980, for aggravated burglary, felonious assault and aggravated murder. He pled not guilty to each count and the case was set for trial on September 30, 1980. Since he was charged with a capital crime, petitioner was denied bail pending trial.

* The Honorable Charles M. Allen, Judge of the United States District Court for the Western District of Kentucky, sitting by designation.

Prior to the scheduled commencement date of the trial, three local television stations informed the trial court of their intention to televise the trial.[1] On August 21, petitioner moved to exclude television cameras from the courtroom. In early September the trial court held evidentiary hearings on the motion and on September 22 the trial court sustained the motion based on its finding that television coverage would adversely affect petitioner's conduct in open court.[2]

Unknown to both the defendant and the trial court, on September 25, five days before the trial was to begin, the television stations filed an original action in the Ohio Supreme Court seeking an order prohibiting the trial court from enforcing its decision or, in the alternative, an order compelling the trial court to permit broadcast coverage of the trial. The television stations asked that they be allowed to present evidence at the evidentiary hearing. On September 30, the date on which the trial court began selecting a jury for the trial, the Ohio Supreme Court granted the writ of prohibition and set the case for argument, apparently on its regular docket. When petitioner became aware of this action, he moved, as an intervenor, to expedite the proceedings. Without explanation, the Ohio Supreme Court refused to expedite the appellate proceedings. Petitioner remained in jail. That court's final decision, requiring the trial court to hold a new hearing and to permit the television stations to present evidence at this hearing, was not released until December 23, 1980. *State ex rel. Miami Valley Broadcasting Corp. v. Kessler,* 64 Ohio St.2d 165, 413 N.E.2d 1203 (1980) (per curiam).

The new evidentiary hearing was held on January 17, 1981. The television stations, after effecting a delay of more than 100 days in order to gain the right to present evidence at this hearing, then declined to present any evidence. The trial court adopted its previous ruling, and the trial commenced on January 26, 1981, with no cameras in the courtroom. Petitioner was convicted on both the aggravated murder and felonious assault charges and sentenced to life imprisonment.

Petitioner appealed the convictions to the Ohio Court of Appeals arguing that his state statutory right to a speedy trial was violated. Ohio law provides that a person accused of a felony must be brought to trial within ninety days of arrest if the accused is held in jail in lieu of bail on the pending charge. OHIO REV.CODE ANN. § 2945.71 (Baldwin 1984). If this provision is violated, the accused must be discharged and such discharge is a bar to further criminal proceedings based on the same conduct. OHIO REV.CODE ANN. § 2945.73. Ohio law provides, however, that the time period may be extended by "the period of any reasonable continuance granted other than upon the accused's own motion." OHIO REV.CODE ANN. § 2945.72(H). The state Court of Appeals determined that the delay occasioned by the action in the Ohio Supreme Court fits within this exception. As a matter of state law, the Court of Appeals concluded that the continuance from September 30, 1980, to January 26, 1981, was both necessary and reasonable. *Ohio v. Hutchison,* No. CA7228, slip op. at 4–5 (Ct.App. Montgomery County, December 11, 1981); Joint Appendix at 67–68. Petitioner's appeal to the Ohio Supreme

---

1. Ohio law provides for such coverage subject to restrictions which may be imposed by the trial court. *See* Rule 11, Ohio Rules of Superintendence for Courts of Common Pleas; Ohio Code of Judicial Conduct, Canon 3A(7)(c). *See also State ex rel. Grinnell Communications Corp. v. Love,* 62 Ohio St.2d 399, 406 N.E.2d 809 (1980) (per curiam) (coverage must be allowed unless trial court determines after evidentiary hearing that it would distract participants, impair dignity of proceedings, or otherwise interfere with fair trial).

2. A psychologist testified at the hearing that petitioner had difficulty controlling his aggression and that the broadcast coverage of the trial against his wishes quite likely would make him more susceptible to loss of control during the trial. *Ohio v. Hutchison,* No. 80–CR–948, slip op. at 2–3 (Ct. of Common Pleas, Montgomery County, September 22, 1980) (order denying broadcasters' request for electronic and photographic coverage); Joint Appendix at 21–22.

Court was dismissed as lacking a substantial question.

Having exhausted his state appellate remedies, petitioner then filed the instant habeas corpus action alleging that the pretrial delay occasioned by the media's attempt to televise the trial violated his rights to a speedy trial, to due process, and to equal protection. The District Court, in a thoughtful, well-reasoned published opinion, denied the writ. *Hutchison v. Marshall*, 573 F.Supp. 496 (S.D.Ohio 1983).

We affirm.

## II.

On appeal petitioner does not claim that the Ohio courts violated the speedy trial provision of the sixth amendment to the federal Constitution: "the accused shall enjoy the right to a speedy and public trial ...." His argument is not based on the Constitution's specific language on the subject, but rather, he frames his arguments in the doctrinal language of the two open-ended provisions of the fourteenth amendment, the equal protection clause and the fundamental fairness component of the due process clause.[3]

### A. Equal Protection

Petitioner's equal protection argument begins with the assertion that he was, prior to trial, a member of the class of persons accused of felonies in Ohio. Petitioner argues that he was not treated the same as the other class members in that he was arbitrarily denied his rights under the Ohio speedy trial statute and that this unequal treatment is not rationally related to a legitimate state interest.

We note first that the Ohio courts have determined that petitioner's rights un-

der the Ohio speedy trial statute have not been violated. It is axiomatic that state courts are the final authority on state law. The Ohio courts concluded that the delay in this case was the result of a necessary and reasonable continuance granted on the trial court's own motion, a ground that is construed to toll the period of pretrial delay under OHIO REV.CODE ANN. § 2945.72(H). Although petitioner argues, in effect, that this interpretation is erroneous, a federal court may not set aside the state court's interpretation of state statutes. State statutes mean what state courts say they mean. *See Railroad Commissioners v. Pullman*, 312 U.S. 496, 499–500, 61 S.Ct. 643, 644–645, 85 L.Ed. 971 (1941) ("The last word on the meaning of [a Texas statute] belongs neither to us nor to the district court but to the Supreme Court of Texas."). Even if it could be said that the state court's interpretation is wrong, it has long been recognized that "a mere error of state law" is not a denial of due process. *Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948), *quoted in Engle v. Isaac*, 456 U.S. 107, 121 n. 21, 102 S.Ct. 1558, 1568 n. 21, 71 L.Ed.2d 783 (1982). This rule applies with equal force to equal protection claims. Petitioner has not shown that he is the victim of race, gender or some other kind of discrimination or unreasonable classification.

### B. Due Process

Petitioner's due process argument is, in one respect, the equal protection argument recast in a due process dialect. He argues that the Ohio speedy trial statute creates a liberty interest and that he was arbitrarily denied this liberty interest, presumably by the Ohio courts' failure to find a violation

---

**3.** Petitioner frames the issues presented for review thusly:

I. Was the fundamental fairness requirement of the due process clause of the fourteenth amendment violated by the intervention of television broadcasters and the Ohio Supreme Court who caused appellant's trial to be halted in progress and in so doing denied him the right to be tried within ninety days as guaranteed by Ohio statutes?

II. Was appellant's right under the fourteenth amendment to the equal protection of the laws of the State of Ohio violated when he was not brought to trial within the time period established by law in Ohio as a direct result of the action of the Ohio Supreme Court?

Brief of Petitioner-Appellant at (iv).

of the state speedy trial statute. We have already rejected petitioner's equal protection claim constructed on the premise that the Ohio courts erroneously interpreted or applied the Ohio statute, and that portion of the due process claim constructed on the same premise is equally without merit.

■ Petitioner's second due process argument is based on a notion of fundamental fairness. The concept of "fundamental fairness" has two lives in the cases. It served as the doctrinal conduit through which various provisions of the Bill of Rights were incorporated or absorbed into the fourteenth amendment. *See* L. TRIBE, AMERICAN CONSTITUTIONAL LAW at 564–72 (1978) *and cases cited therein.* It has also been used as a yardstick by which to judge irregularities in criminal trials. *See, e.g., Chandler v. Florida,* 449 U.S. 560, 101 S.Ct. 802, 66 L.Ed.2d 740 (1981) (televising of criminal trial does not *per se* result in fundamentally unfair trial); *Estes v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965) (televised broadcast of trial proceedings resulted in fundamentally unfair trial); *Turner v. Louisiana,* 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965) (permitting court officer who testifies in case to be in charge of jury results in fundamentally unfair trial); *Walker v. Engle,* 703 F.2d 959 (6th Cir.1983) (admission of irrelevant, highly prejudicial evidence resulted in fundamentally unfair trial). At the root of this prong of the fundamental fairness doctrine is the belief that a "fair trial in a fair tribunal is a basic requirement of due pro-

cess." *In re Murchison,* 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955).

Petitioner's claim in this case has nothing whatsoever to do with the fairness of the trial itself. Instead, his claim goes to the fairness of his extended pretrial detention. Although fundamental fairness has been applied to various pretrial proceedings, that application is limited to events or circumstances that affect or tend to affect the fairness of the trial. *See, e.g., Rideau v. Louisiana,* 373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963) (failure to grant change of venue motion after televised broadcast of jailhouse confession resulted in fundamentally unfair trial because any subsequent court proceedings "could be but a hollow formality"). In the instant case petitioner does not argue that the alleged unfair detention resulted or tended to result in an unfair trial. His claim is more in the nature of the one presented in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), in which a class of pretrial detainees challenged the conditions of their confinement. The Supreme Court did not rely on the fundamental fairness doctrine in that case, and we believe that doctrine, as an independent substantive constitutional standard, should not control this case.

Although petitioner's fundamental fairness argument as presented on appeal does not now appear to incorporate a sixth amendment claim of a right to a speedy trial,[4] we agree, in all but one respect,[5]

**4.** *See* note 3, *supra,* for the text of the questions presented.

**5.** The District Court determined that the delay from September 30, 1980, the date on which the Ohio Supreme Court effectively halted the trial, until January 26, 1981, the date on which the trial finally began, is attributable to the television stations and the Ohio Supreme Court, not to either the petitioner or the prosecution. 573 F.Supp. at 499. Contrary to the apparent conclusion of the District Court that the delay caused by the Ohio Supreme Court is not attributable to the government, in *Barker* the Supreme Court stated that court-caused delays should be attributed to the government:

> different weights should be assigned to different reasons [for delay]. A deliberate attempt

to delay the trial in order to hamper the defense should be weighed heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighed less heavily but nevertheless should be considered since *the ultimate responsibility for such circumstances must rest with the government rather than with the defense.*

407 U.S. at 531, 92 S.Ct. at 2192 (emphasis added) (footnote omitted). The delay occasioned by the television stations' petition to the Ohio Supreme Court and that court's failure or refusal to expedite that proceeding is, in this context, analogous to delay occasioned by overcrowded courts: although the delay does not emanate from direct action by the prosecutor's office it is nonetheless chargeable to the government because it results from

with the District Court's discussion of the issue and its conclusion that *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), does not afford relief. *See* 573 F.Supp. at 499. To the extent that petitioner may later attempt in an en banc petition or a petition for certiorari to raise a sixth amendment speedy trial argument, we rely on the District Court's disposition of the issue.

### III.

Although we decline to set aside petitioner's murder and assault convictions because the pretrial delay did not cause unfairness at trial, we are mindful that prisoners should not be allowed to languish in jail while courts hear collateral arguments about press coverage. Justice Powell has observed that "it would be entirely impractical to require criminal proceedings to cease while appellate courts [are] afforded an opportunity to review a trial court's decision to close proceedings" to television cameras. *Gannett Co. v. DePasquale*, 443 U.S. 368, 398, 99 S.Ct. 2898, 2915, 61 L.Ed.2d 608 (1979) (Powell, J., concurring) (dictum). We reserve the question of the availability of pretrial habeas corpus as an answer to unreasonable pretrial delay and our opinion should not be interpreted as foreclosing relief in such an action under the bail provision of the eighth amendment or other constitutional provisions. *See Wolfish v. Levi*, 573 F.2d 118 (2d Cir.1978) (pretrial habeas relief available to challenge conditions of confinement), *rev'd on other grounds and remanded sub nom. Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Gully v. Kunzman*, 592 F.2d 283 (6th Cir.1979) (pretrial habeas relief available for double jeopardy claims); *Sistrunk v. Lyons*, 646 F.2d 64 (3rd Cir. 1981) (pretrial habeas relief available to challenge allegedly excessive bail). *See also Gerstein v. Pugh*, 420 U.S. 103, 108 n. 9, 95 S.Ct. 854, 860 n. 9, 43 L.Ed.2d 54 (1975) (abstention principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27

L.Ed.2d 669 (1971), not applicable to challenges to pretrial detention not cognizable in criminal prosecution).

For the foregoing reasons, the judgment of the District Court denying the writ is affirmed.

---

a *de facto* state policy that inevitably results in delay. The lack of diligence of state courts, as well as federal courts, is as detrimental to

defendants as is the indifference of prosecutors. The state must bear responsibility for its courts as well as its prosecutors.