NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0158n.06

No. 25-1571

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Apr 07, 2026
KELLY L. STEPHENS, Clerk

GREGORY SEMACK; BRUCE CARLETON; and
CHARLES WAYNE BROOKS,

      Plaintiffs-Appellants,

v.

ROSCOMMON COUNTY, MICHIGAN and
CHASE SCHEPKE, as Drain Commissioner, sued in
his official and personal capacities,

      Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: BOGGS, NALBANDIAN, and MATHIS, Circuit Judges.

BOGGS, Circuit Judge. This case involves a dispute between Roscommon County, Michigan and property owners whose land abuts Higgins Lake, an inland lake in Roscommon County. Under Part 307 of the Michigan Natural Resources and Environmental Protection Act, Roscommon County is required to maintain judicially established lake levels in the county. Following the Michigan legislature's passage of Public Act 112 in 2024, which modified Part 307, plaintiff landowners sued the county and the county drain commissioner, alleging that the amendments to Part 307 deprived them of due process and their right to the judicially established lake level. The district court dismissed the case for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

For the reasons below, we affirm the judgment of the district court.

## BACKGROUND

Part 307 of the Natural Resources and Environmental Protection Act ("NREPA") provides a process for establishing the "Normal Level" of an inland lake. Mich. Comp. Laws §§ 324.30701–07. The process for setting the Normal Level can be initiated by either the county board or a petition to the county board by two-thirds of the owners of land abutting the lake. *Id.* § 324.30702(1). The determination is made by a state court, which sets a hearing. *Id.* § 324.30707(1). Notice is required; an attorney for the county is required to publish notice in at least one newspaper in the county for three successive weeks before the date of the hearing. *Ibid.* In addition, the county's drain commissioner must serve notice of the hearing by first-class mail at least three weeks before the date of the hearing to each person whose name appears in the latest tax-assessment roll as owning land within a proposed "special assessment district." *Id.* § 324.30707(2).

Part 307 originally defined Normal Level as:

> the level or levels of the water of an inland lake that provide the most benefit to the public; that best protect the public health, safety, and welfare; that best preserve the natural resources of the state; and that best preserve and protect the value of property around the lake. A normal level shall be measured and described as an elevation based on national geodetic vertical datum.

*Citizens for Higgins Lake Legal Levels v. Roscommon Cnty. Bd. of Comm'rs*, 988 N.W.2d 841, 852 (Mich. Ct. App. 2022) (citing Mich. Comp. Laws § 324.30701(h)). In determining the Normal Level, the state court must consider the following:

> (a) Past lake level records, including the ordinary high-water mark and seasonal fluctuations.
> (b) The location of septic tanks, drain fields, sea walls, docks, and other pertinent physical features.
> (c) Government surveys and reports.
> (d) The hydrology of the watershed.
> (e) Downstream flow requirements and impacts on downstream riparians.
> (f) Fisheries and wildlife habitat protection and enhancement.
> (g) Upstream drainage.

 (h) Rights of riparians.
 (i)  Testimony and evidence offered by all interested persons.
 (j)  Other pertinent facts and circumstances.

Mich. Comp. Laws § 324.30707(4). If a court-determined Normal Level is established, the county (or its delegated authority) must maintain that level. *Id.* § 324.30702(3).

  Plaintiffs Gregory Semack, Bruce Carleton, and Charles Wayne Brooks ("Plaintiffs") are landowners whose property borders Higgins Lake, a 10,000-acre lake in Roscommon County, Michigan. In 1982, utilizing the process detailed in Part 307, the Roscommon County Circuit Court established the summer level of Higgins Lake at 1,154.11 feet and the winter level at 1,153.61 feet. Plaintiffs allege that after issues arose with a dam in 2007, Roscommon County "regularly and systematically failed" to keep Higgins Lake at the Normal Level, especially during summer. R. 22, Am. Compl., PageID 320. This resulted in a 2019 lawsuit, *Citizens for Higgins Lake Legal Levels v. Roscommon County Board of Commissioners*, No. 19-724711-AW. The plaintiffs sought a writ of mandamus ordering the defendant to maintain the lake level in accordance with their duties. *Citizens for Higgins Lake Legal Levels*, 988 N.W.2d at 847. The trial court declined to issue the writ on the grounds that the plaintiffs failed to establish that they had "a clear legal right" to compel the county to raise the lake level. The Michigan Court of Appeals reversed, holding that "once a court has determined the 'normal level' of an inland lake, it 'shall' be maintained at that 'normal level' by the responsible authority" and that Part 307 "does not explicitly allow for deviations." *Id.* at 853 (quoting Mich. Comp. Laws §§ 324.30708(1), 324.30702(3)).

  Allegedly as a result of Roscommon County's unhappiness with this outcome, the Michigan legislature passed Public Act 112 in July 2024. *See* Mich. Comp. Laws § 324.30701, Mich. Pub. Acts 2024, Act No. 112. Public Act 112 altered the definition of "Normal Level" in Part 307, now defining it as:

the target level or levels of the water of an inland lake, around which actual levels may fluctuate, that provide the most benefit to the public; that best protect the public health, safety, and welfare; that best preserve the natural resources of this state; and that best preserve and protect the value of property around the inland lake. A normal level shall be measured and described as an elevation or elevations based on a geodetic vertical datum including ranges based on tolerance, operational or weather conditions, seasonality, or other similar natural and regional considerations. An inland lake shall be considered to be maintained at its normal level during temporary water level fluctuations resulting from weather or natural events, during construction activities authorized by the department, or if a county or its delegated authority operates lake level infrastructure in a manner that may affect water levels but is reasonably intended to maintain a normal level. The application of this definition includes, but is not limited to, all normal levels established before the effective date of the amendatory act of the 2023-2024 legislative session that amended this section.

Mich. Comp. Laws § 324.30701(i). This amended definition provides counties with greater flexibility in maintaining the normal water levels for inland lakes. *Ibid.* A county will still comply with the judicially established normal level even if a lake's water level temporarily drops due to weather or other events. *Ibid.* And the statute is also retroactive, meaning that it applies to the normal level for Higgins Lake established in the 1982 court order. *Ibid.*

Public Act 112 went into effect in April 2025. Plaintiffs had already filed suit in July 2024, alleging a procedural-due-process violation under the Fourteenth Amendment. They claimed that the alteration of Part 307's definition of a Normal Level "effectively attempts to alter the 1982 Legal Lake Level Order by retroactive legislation thereby depriving local riparians of their legitimate claim of entitlement and/or property rights with no due process provided." R. 22, Am. Compl., PageID 323. Plaintiffs sought a declaratory judgment "declaring the challenged portions of Public Act 112 of 2024 as violating due process and are void," injunctive relief "to halt the violations of due process," and nominal damages. *Id.* at PageID 327.

After Plaintiffs filed the amended, operative complaint in February 2025, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the court lacked

subject-matter jurisdiction. The district court agreed and granted the motion, holding that Plaintiffs lacked Article III standing to sue, thus depriving the court of subject-matter jurisdiction. *Semack v. County of Roscommon*, No. 24-11935, 2025 U.S. Dist. LEXIS 118641, at *14–15 (E.D. Mich. June 23, 2025).

Plaintiffs now appeal.

## ANALYSIS

We review a dismissal for lack of standing *de novo. McGlone v. Bell*, 681 F.3d 718, 728 (6th Cir. 2012). "The burden of establishing standing is on the party seeking federal court action." *Rosen v. Tenn. Comm'r of Fin. & Admin.*, 288 F.3d 918, 927 (6th Cir. 2002).

Standing is the "threshold question in every federal case." *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999). To establish Article III standing, Plaintiffs must show they (1) have suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *McGlone*, 681 F.3d at 729. And "plaintiffs must demonstrate standing . . . for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

Plaintiffs' alleged injury can be construed in two ways: (A) the actual deprivation of judicially established lake levels, and (B) the deprivation of a due-process right to protections from the modification of those lake levels. We address each in turn.

## A. Injury Based on Actual Deprivation of Judicially Established Lake Levels

The first potential injury alleged by Plaintiffs is Roscommon County's failure to maintain the judicially established lake level. This could constitute a cognizable injury; Michigan courts

have held that plaintiffs objecting to the impact of water levels do have "a sufficient personal stake" to constitute an injury. *Wortelboer v. Benzie County*, 537 N.W.2d 603, 606 (Mich. Ct. App. 1995). To property owners along the lake, the County's failure to maintain the lake level plausibly could interfere with the "use and enjoyment of their riparian rights and property." *Id.* at 212.

However, Plaintiffs do not allege that Defendants are currently failing to maintain Higgins Lake at the 1982 court-mandated level. And they must allege "actual present harm or a significant possibility of future harm" for declaratory or injunctive relief. *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019). Past harm does not entitle a plaintiff to declaratory or injunctive relief. *Ibid.* It is true that in the past and before the passage of Public Act 112, Defendants had failed to maintain Higgins Lake at the mandated level. *See Citizens for Higgins Lake Legal Levels*, 988 N.W.2d at 845–47. It is plausible that Defendants will fail to do so again. But "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 832 (6th Cir. 2001) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Roscommon County's failure to maintain lake levels in the past does not reach the "significant possibility" threshold required to establish standing for declaratory and injunctive relief. *See id.* at 833. In fact, Plaintiffs disavow a theory of injury based on future harm, like "a feared future drop in water level." Reply Br. at 4. They say that their showing of standing isn't premised on "predict[ing] a future harm" but "respond[ing] to a completed one," which they claim occurred the moment the Michigan legislature passed Public Act 112. *Id.* at 4–5.

Should Roscommon County actually fail to maintain lake levels as required by Part 307 and the court-mandated Normal Level, Plaintiffs may have a sufficient injury in fact. But when the

operative complaint was filed, the deprivation of lake levels was hypothetical and conjectural, not actual or imminent, and therefore cannot confer standing.

As for past harm, which could be sufficient to support Plaintiffs' claim for nominal damages, "[s]tanding is determined at the time the complaint is filed." *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 580 (6th Cir. 2012). But Plaintiffs filed the operative complaint before Public Act 112 became effective. So past changes to lake levels cannot be attributed to Public Act 112.

## B. Injury Based on Deprivation of Vested Right in Judicially Established Lake Levels

Plaintiffs argue that Public Act 112 effectively modified the court-determined water level for Higgins Lake by redefining the target as a level "around which actual levels may fluctuate" as opposed to a precise standard. So, in their theory, passing this law constitutes a modification of the 1982 court order. And doing so without affording Plaintiffs any involvement in the modification, like notice or an opportunity to be heard, is a procedural due process violation.

Thus, their claimed injury is Public Act 112's modification of the 1982 court order, not any injury caused by a change in lake levels. According to Plaintiffs, they had a legal interest in the court order's establishment of precise lake levels and that order's protection against changing the lake level except through Part 307's prescribed process. In their view, Public Act 112 took away— or, at the very least, interfered with—that interest.

The district court correctly held that "a bare procedural violation, divorced from any concrete harm" does not "satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). Even if the passage of Public Act 112 constituted a due-process violation—which is not at all clear—Plaintiffs must still allege an injury in fact, "an invasion of a legally protected interest." *Id.* at 339. And as discussed above, Roscommon County had not failed

to maintain lake levels as of the date the Amended Complaint was filed, so Plaintiffs cannot have been injured by that failure. Nor do Plaintiffs claim that lake levels are at imminent risk of changing.

Instead, Plaintiffs allege that they have a legally protected interest in the levels established by the 1982 court order. Therefore, they argue, the "effective[] attempt[] to alter the 1982 Legal Lake Level Order" by Public Act 112 constitutes an injury. R.22, Am. Compl., PageID 323.

But Plaintiffs do not have an individual interest in the 1982 court order establishing Higgins Lake's Normal Level, standing alone and divorced from any actual change in lake levels. Plaintiffs correctly identify that state law can confer a "legitimate claim of entitlement." *Golden v. City of Columbus*, 404 F.3d 950, 955 (6th Cir. 2005). But we must defer to state interpretations of state law because "[s]tate statutes mean what state courts say they mean." *Hutchison v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984) (citing *R.R. Comm'n of Tex. v. Pullman*, 312 U.S. 496, 499–500 (1941)). And Michigan courts have made it clear that the Inland Lake Level Act ("ILLA"), with the provisions relevant here now codified within NREPA, does not confer an individual interest in NREPA court orders.

In *In re Van Ettan Lake*, the Michigan Court of Appeals held that individual landowners could not sue under the ILLA over the creation of a special assessment district because "[t]he purpose of [ILLA] is to provide for the control and maintenance of inland lake levels for the benefit and welfare of the public." 386 N.W.2d 572, 576 (Mich. Ct. App. 1986). It emphasized that "[t]he focus of the [ILLA] is clearly on the public welfare and not on individual riparian rights." *Ibid.* Another Michigan court affirmed this principle, stating that the establishment of target levels does not prevent the reassessment of those levels in the future, and "the ILLA does not create or protect individual rights regarding inland lake levels or create a civil cause of action for the benefit of

individuals who are not satisfied with the county's exercise of authority." *Wortelboer*, 537 N.W.2d at 606. Plaintiffs fail to identify any Michigan case that confers an individual interest in NREPA court orders or refutes the applicability of *In re Van Ettan Lake* and *Wortelboer*. *Cf. Salazar v. Buono*, 559 U.S. 700, 712 (2010) (plurality opinion) (noting that "[a] party that obtains a judgment in its favor acquires a 'judicially cognizable' interest in ensuring compliance with that judgment" and possesses "standing to seek its vindication").

Because Plaintiffs have no individual interest in the 1982 court order that previously established lake levels for Higgins Lake, and because they do not allege an injury based on past, ongoing, or imminent changes in actual lake levels, Plaintiffs have failed to plead an injury in fact and lack standing.

## CONCLUSION

For the reasons above, the judgment of the district court is **AFFIRMED**.